UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NICHOLAS LAGRASTA and
DOMENICO LAGRASTA, and
MAURO LAGRASTA, on behalf
of themselves and all others
similarly situated,

                           Plaintiffs,

vs.                                        Case No. 2:01-cv-251-FTM-29DNF

FIRST UNION SECURITIES, INC.,

                           Defendant.

_____

## OPINION AND ORDER

        This matter comes before the Court on plaintiffs' Motion for
Class Certification Directed to Second Amended Class Action
Complaint and Supporting Memorandum of Law (Doc. #121), filed March
1, 2005.  Defendant filed an Opposition and Memorandum of Law
(Doc. #127) and a Request for Oral Argument (Doc. #128) on April
22, 2005.  With leave of court, plaintiffs filed a Reply Brief
(Doc. #133) on May 12, 2005.

        Plaintiffs Nicholas LaGrasta, Domenico LaGrasta, and Mauro
Lagrasta (collectively plaintiffs or "the LaGrastas") filed a
Second Amended Complaint (Doc. #67) alleging a single count of
securities fraud under Section 10(b) of the Securities Exchange Act
of 1934, 15 U.S.C. § 78(j), and Rule 10b-5 promulgated under the
Act, 17 C.F.R. § 1240.10b-5.  Plaintiffs are investors who
purchased the stock of Ask Jeeves, Inc., an online internet
research company.  Plaintiffs claim that defendant made material
misstatements and omissions, and that its analyst (Carolyn Trabuco)

inflated the price of Ask Jeeves shares through her "strong buy" recommendations while acting under undisclosed conflicts of interest.  To establish such a claim under § 10(b) and Rule 10b-5, plaintiffs must allege and ultimately prove:  (1) a misstatement or omission (2) of material fact (3) made with scienter (4) on which plaintiffs justifiably relied (5) that proximately caused their injury.  Ziemba v. Cascade International, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001).  More recently, a unanimous Supreme Court stated that in the context of publicly traded securities and purchases or sales in public securities markets, the elements are: (1) a material misrepresentation or omission; (2) scienter, i.e., a wrongful state of mind; (3) a connection between the purchase or sale of the security; (4) reliance; (5) economic loss; and (6) loss causation, i.e., causal connection between the material misrepresentation and the loss.  Dura Pharmaceuticals, Inc. v. Broudo, 125 S.Ct. 1627, 1631 (2005).

In LaGrasta v. First Union Securities, Inc., 358 F.3d 840, 842-45 (11th Cir. 2004) the Court summarized the facts alleged in the Second Amended Complaint and those permitted by judicial notice.  With two exceptions, the Court will adopt without repeating those facts.[1]

_____

[1]While the Second Amended Complaint alleges that Nicholas LaGrasta bought the stock based upon Ms. Trabuco's reports (Doc. #67, ¶ 5) and Mauro LaGrasta purchased stock after the report, both testified by deposition that they never read any of the reports.  In December, 1999, Nicholas became aware of Ask Jeeves stock from his First Union account broker Michelle Kief ("Ms. Kief").  Ms. Kief told him that First Union had set a target price above market value and was "tracking" the stock, and that the First Union analyst made a strong buy recommendation.  Nicholas purchased some Ask Jeeves stock and passed the information along to his uncles, Mauro and Dominico, who also purchased some of the stock.  Additionally, although the Second Amended Complaint asserts Mauro lost

Plaintiffs filed the Affidavits (Docs. #68-71) and the Notice of Announcement of Class Action Lawsuit (Doc. #73) required by the Private Securities Litigation Reform Act (PSLRA).  Plaintiffs now seek certification of a Rule 23 class consisting of "all Ask Jeeves shareholders who purchased the Ask Jeeves shares beginning November 18, 1999 (the date of defendant's first false and misleading Ask Jeeves report) and continuing to December 31, 2000 (the month after Defendant abruptly terminated Trabuco's employment and suspended coverage of Ask Jeeves)."  (Doc. #121, p.5).

## I.

"Questions concerning class certification are left to the sound discretion of the district court." Cooper v. Southern Co., 390 F.3d 695, 711 (11th Cir. 2004).  "For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." Klay v. Humana, Inc., 382 F.3d 1241, 1250 (11th Cir. 2004), cert. denied, 125 S.Ct. 877 (2005).  See also Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613-14 (1997).  The four threshold requirements are (1) numerosity: the class is so numerous that joinder of all members is impractical; (2) commonality: questions of law or fact are common to the class; (3) typicality: the representatives of the class present claims or defenses that are typical of the class; (4) adequacy: the representatives of the class will fairly and adequately protect the interests of the class.  Fed. R. Civ. P.

approximately $200,000 (Doc. #67, ¶ 33), Mauro testified by deposition that he has not sold his stock because he believes stocks, including Ask Jeeves, were going to go up (Doc. #127, p. 46), and has filed an Affidavit (Doc. #71) stating he has not sold his stock.

23(a); <u>Amchem Products</u>, 521 U.S. at 613; <u>Turner v. Beneficial Corp.</u>, 242 F.3d 1023, 1025 (11th Cir.) (<u>en banc</u>), <u>cert. denied</u>, 534 U.S. 820 (2001); <u>Pickett v. Iowa Beef Processors</u>, 209 F.3d 1276, 1279 (11th Cir. 2000).   In this case, plaintiffs seek class certification under Rule 23(b)(3), which requires plaintiffs to show predominance and superiority.   When class certification is sought under this provision, the court is directed to take "a close look at the case before it is accepted as a class action. . . .." <u>Amchem Products</u>, 521 U.S. at 615, citing the Reporter for the 1966 amendments to Rule 23.   "The initial burden of proof to establish the propriety of class certification rests with the advocate of the class."   <u>Rutstein v. Avis Rent-A-Car Sys., Inc.</u>, 211 F.3d 1228, 1233 (11th Cir. 2000), <u>cert. denied</u>, 532 U.S. 919 (2001).

II.

The parties have a fundamental disagreement concerning the process the Court utilizes to determine whether to certify a class. Plaintiffs assert that the Court must take the factual allegations in the Second Amended Complaint as true, without making an adjudication on the merits of the case.   (Doc. #121, p. 2 n.1). Defendant contends that the Court may not simply accept the allegations in the Second Amended Complaint as proof that Rule 23 is satisfied, but must go beyond the allegations and "engage in whatever fact finding is needed" to determine whether class certification is appropriate.   (Doc. #127, p. 5).

Evidence relevant to the class certification question is often intertwined with the merits, <u>Cooper</u>, 390 F.3d at 712, and therefore a court may look beyond the allegations of the complaint to determine whether the requirements of Rule 23 have been met. <u>Kirkpatrick v. J.C. Bradford & Co.</u>, 827 F.2d 718, 722-23 (11th Cir. 1987), citing <u>General Telephone Co. Of Southwest v. Falcon</u>, 457

4

U.S. 147, 160 (1982).   "[I]t is often necessary for a district court to consider, for example, a deposition of a named plaintiff to determine whether Rule 23(a)'s commonality and typicality requirements are met." Kirkpatrick, 827 F.2d at 723.   "[T]he trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." Valley Drug Company v. Geneva Pharmaceuticals, Inc. 350 F.3d 1181, n.15 (11th Cir. 2003).   This does not, however, allow a court to reject class certification based only on its assessment of plaintiffs' likelihood of success on the claim. Kirkpatrick, 827 F.2d at 723.   While a "rigorous analysis" and an "informed assessment" of proffered evidence is appropriate, a district court cannot improperly invade the province of the jury. Cooper, 390 F.3d at 712-13.[2]   With these principles in mind, the Court will consider plaintiffs' motion.

### III.

Defendant opposes class certification because the proposed class fails to satisfy the requirements of commonality, typicality, adequacy of representation, and predominance, and the proposed class definition is overbroad as to its termination date.

**A.    Rule 23(a) Requirements:**

**(1)    Numerosity**

Rule 23(a)(1) requires that the class is so numerous that joinder of all members is impractical.   Practicability of joinder depends on many factors, including the size of the class, ease of

---

[2]See also Gariety v. Grant Thornton, LLP, 368 F.3d 356, 364-65 (4th Cir. 2004)(district court erred in refusing to look beyond facts alleged in complaint); Unger v. Amedisys, Inc., 401 F.3d 316, 319 (5th Cir. 2005)("findings must be made based on adequate admissible evidence to justify class certification.")

identifying its numbers and determining their addresses, the facility of making service on them if joined, and their geographic dispersion. Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 878 (11th Cir. 1986). There is no specific number of class members necessary to evidence impracticability of joinder, and it is not necessary that the precise number of class members be known; the plaintiff, however, must show some evidence or reasonable estimate of the number of class members. Id. Plaintiff estimates "thousands" of potential class members, and defendant does not contest plaintiffs' satisfaction of the numerosity requirement. The Court agrees that the numerosity requirement is satisfied in this case. E.g., Cheney v. Cyberguard Corp., 213 F.R.D. 484, 490 (S.D.Fla. 2003).

**(2)  Typicality and Commonality**[3]

"Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at

---

[3]"The typicality and commonality requirements are distinct but interrelated, as the Supreme Court has made clear:

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

Cooper, 390 F.3d at 713, quoting Falcon, 457 U.S. at 157 n.13. "The commonality and typicality requirements overlap. Both requirements focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." Cooper, 390 F.3d at 713, quoting Prado-Steiman, 221 F.3d at 1278. "Traditionally, commonality refers to the group characteristics as a whole and typicality refers to the individual characteristics of the named plaintiff in relation to the class." Prado-Steiman, 221 F.3d at 1279.

large." <u>Wooden v. Bd. of Regents of the Univ. Sys. of Ga.</u>, 247 F.3d 1262, 1287 (11th Cir. 2001). Typicality is satisfied where the named plaintiffs' claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. <u>Kornberg v. Carnival Cruise Lines, Inc.</u>, 741 F.2d 1332, 1337 (11th Cir. 1984), <u>cert. denied</u>, 470 U.S. 1004 (1985). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." <u>Murray v. Auslander</u>, 244 F.3d 807, 811 (11th Cir. 2001)(citation omitted). Neither typicality or commonality require that all putative class members share identical claims, and both may be satisfied even if some factual differences exist between the claims of the named representatives and the claims of the class at large. <u>Prado-Steiman</u>, 221 F.3d at 1279 n. 14. "The typicality requirement may be satisfied despite substantial factual differences, however, when there is a strong similarity of legal theories." <u>Auslander</u>, 244 F.3d at 811 (citation omitted). "Nevertheless, the named plaintiffs' claims must still share the same essential characteristics as the claims of the class at large." <u>Cooper</u>, 390 F.3d at 714 (citation and internal quotations omitted).

"[The] commonality requirement measures the extent to which all members of a putative class have similar claims." <u>Cooper</u>, 390 F.3d at 714. "Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." <u>Auslander</u>, 244 F.3d at 811 (citation omitted).

The LaGrastas argue that they were personally victimized by the same common fraudulent scheme perpetrated by defendant on the rest of the class members and have suffered the same type of damage (monetary loss) due to the same unlawful conduct as all putative

7

class members.  (Doc. #121, p.9).  This common scheme, plaintiffs
assert, is characterized by common issues of law and fact including
(1) "whether defendant's analyst reports contain fraudulent and
misleading misrepresentations and material omissions"; (2) "whether
those misrepresentations and omissions were made knowingly and with
the intent to defraud or deceive, or were made with severe
recklessness"; (3) "whether those misrepresentations and omissions
in the reports created a fraud on the market that artificially
inflated the demand and the price of Ask Jeeves shares;" and (4)
"whether defendant directly or indirectly encouraged Ms. Trabuco to
release Ask Jeeves research reports that were not based on her
unbiased and fair analysis." (Doc. #121, p. 8).  Plaintiffs also
assert that their claims and the claims of the class members "are
based on the same remedial regime pursuant to the identical federal
statute . . ." and that there are no significant differences in the
claims, defenses, counterclaims or other issues between them and
other class members. (Id).

    Defendant responds that the case is "rife with individual
issues and defenses" (Doc. #127, pp. 12-13) which preclude any
finding of typicality, commonality, or predominance. Specifically,
defendant argues: (1) While plaintiffs seek to challenge First
Union's analyst reports on behalf of a putative class, all named
plaintiffs have admitted during depositions that they never read
any of the reports and the reports did not form a basis for their
purchase of Ask Jeeves stock.  Thus, the content of the reports
will have little bearing on their individual case, but is important
for the other class members.  (2) Nicholas bought the stock based
on the oral representations of his broker, and then told Domenico
and Mauro, who bought the stock because of their trust in Nicholas.
Defendant argues that such oral representations are not readily

8

susceptible to a class action. (3) Defendant has a viable statute
of limitations defense based upon facts which are unique to the
named plaintiffs. Specifically, defendant asserts that Nicholas
has admitted in deposition that he knew about the conflict in
April, 2000, more than one year prior to the May 14, 2001 lawsuit,
and that Domenico and Mauro are "tainted" by this knowledge. (4)
Mauro still owns the stock, and therefore has not suffered any
liquidated loss, while Nicholas and Domenico were forced to sell in
a margin call. Proof of loss causation will thus depend on
individual facts and circumstances for the named plaintiffs and
each of the putative class members.

Defendant is correct that none of the three named plaintiffs
read the First Union reports, as they admitted in depositions.
Nicholas relied upon direct representations by Ms. Kief, who told
him about the reports' strong buy recommendation but not the
conflict of interest. Mauro relied initially upon the
recommendation of Nicholas, and then had conversations with Ms.
Kief. Domenico relied solely upon the recommendation of Nicholas,
and was not a First Union customer. The failure to read the
reports does not preclude a finding of typicality, commonality, or
predominance. Kennedy v. Tallant, 710 F.2d 711, 717 (11th Cir.
1983); Kirkpatrick, 827 F.2d at 724. Here, the thrust of the
misrepresentations was the knowingly false strong buy
recommendations by First Union/Trabuco when there were undisclosed
conflicts of interest. There is no material variation between the
misrepresentations and omissions made to the named plaintiffs and
the misrepresentations and omissions made to the other putative
class members. The failure to read the reports therefore does not
preclude the showing of typicality, commonality, or predominance.

Defendant next argues that oral representations such as those

9

made here are not readily susceptible to class certification.  The former Fifth Circuit did state that "courts usually hold that an action based substantially, as here, on oral rather than written misrepresentations cannot be maintained as a class action." Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 482 F.2d 880, 882 (5th Cir. 1973).  More generally, however, the Court also stated that "[i]f there is any material variation in the representations made or in the degrees of reliance thereupon, a fraud case may be unsuited for treatment as a class action." Id.  Simon's holding that the predominancy requirement of Rule 23(b)(3) was not satisfied was premised on the district court's factual finding that "there was no showing that the oral representations made to Simon by a Merrill Lynch salesman had been similarly made to other members of the purported class, . . ." Id.  Here, however, there is no assertion that the oral representations to two of the named plaintiffs varied materially from the information alleged to have been disseminated generally as a result of defendant's alleged scheme.  The written and oral communications essentially conveyed the same message.  E.g., Klay, 382 F.3d at 1258.[4]  Thus, the existence of oral representations does not provide a basis to deny class certification.  Kirkpatrick, 827 F.2d at 724; Sikes v. Teleline, Inc., 281 F.3d 1350, 1363 (11th Cir.), cert. denied, 537 U.S. 884 (2002).

Defendant also asserts that it has a viable statute of limitations defense as to the named plaintiffs, and thus they are improper class representatives.  It is clear that a plaintiff whose claim is time-barred does not have the requisite typicality and

---

[4]Indeed, oral representations which conflict with contemporaneous written representations do not necessarily preclude reliance. Bruschi v. Brown, 876 F.2d 1526, 1529 (11th Cir. 1989).

cannot serve as a class representative. Franze v. Equitable
Assurance, 296 F.3d 1250, 1254 (11th Cir. 2002)(citations omitted).
In this case the lawsuit was filed on May 14, 2001 (Doc. #1), and
the applicable statute of limitations is one year from inquiry or
actual notice of facts constituting a violation. LaGrasta, 358
F.3d at 846.  The Eleventh Circuit has found from the face of the
Second Amended Complaint that plaintiffs were on inquiry notice
based on an interview with Ms. Trabuco in a *SmartMoney* magazine
article, LaGrasta, 358 F.3d at 846, which discovery has established
was published on May 16, 2000.

Nicholas testified by deposition that he read an article
regarding an interview of Carolyn Trabuco and her statement that
she maintained a strong buy recommendation in order to get the Ask
Jeeves secondary banking business.  (Doc. #127, pp. 47-48, 67).
Nicholas also testified that at some point he learned Ask Jeeves
was having a secondary offering, but did not recall when he learned
this.  (Doc. #127, pp. 65-66).  When he learned of this secondary
offering, he felt there was a conflict of interest because Ms.
Trabuco was trying to gain the secondary banking position, which
would have resulted in the brokerage house making a lot of extra
money.  He felt Ms. Trabuco should have disclosed this information
and that it was inappropriate not to disclose it.  (Doc. #127, p.
66).  Nicholas testified that he recalled having a conversation
with Ms. Kief about this, but could not recall when the
conversation was or asking for Ms. Trabuco's e-mail address.  (Doc.
#127, pp. 65-66).

Ms. Kief, on the other hand, made Account Notes of
conversations with Nicholas.  (Doc. #134).  An April 12, 2000, note
stated that Nicholas "called and said that he wanted carolyn
trabuco e-mail to write her a letter on a stock that she

11

recommended that has gone down so much and that she had recommended the stock and knew there was going to be a secondary coming out." (Doc. #127, pp. 64-65; Doc. #134, Exhibit A). Nicholas testified he did not recall this conversation. (Doc. #127, pp. 65-66). In an April 17, 2000 note, Ms. Kief wrote that Nicholas "called today and told him he had 1100 something to come up with and the remainder of his margin will be due on weds said that ken allman our regional manager said he called him to find out if he was okay with the margin and said he will be in to pay but was disappointed in ask jeeves that the analyst recommended and the banking side of the firm and he told him he would look into it." (Doc. #127, pp. 66-67; Doc. #134, Exhibit A). Nicholas testified that he did not recall this conversation. (Doc. #127, p. 67). When counsel pointed out that the *SmartMoney* article about the Trabuco interview was dated May 16, 2000, and asked Nicholas what prompted him to complain to Ms. Kief in April, 2000, Nicholas testified that he did not recall. (Doc. #127, pp. 70-71).[5]

The record in this case does not clearly establish that the statute of limitations bars Nicholas' claim, as was the case in <u>Franze</u>, 296 F.3d at 1254 (court abused discretion in certifying class where "it is clear from the record that the statute of limitations bars both [plaintiffs] claims.") Whether the conversations took place, when they occurred, what was said, and whether the conversations were sufficient to trigger inquiry notice are issues of fact for a jury which the Court cannot resolve in a class certification motion. <u>Kennedy</u>, 710 F.2d at 716 ("questions

---

[5]Plaintiffs' argument that the Account Notes are inadmissible hearsay is incorrect, since the business records exception applies. Plaintiffs also challenge the accuracy of the dates, but such a matter is for a jury.

of notice and due diligences are particularly suited for a jury's consideration"), citing <u>Azalea Meats, Inc. v. Muscat</u>, 386 F.2d 5, 9 (5th Cir. 1967). While defendant asserts that Domenico and Mauro are "tainted" by Nicholas' knowledge, defendant does not otherwise explain how Nicholas' knowledge is imputed to others. Such knowledge is not automatically imputed to the other named plaintiffs even if possessed by Nicholas. E.g., <u>Tello v. Dean Witter Reynolds, Inc.</u>, 410 F.3d 1275, 1291 (11th Cir. 2005). The Court concludes that while the statute of limitations defense is certainly viable as to Nicholas in light of Ms. Kief's anticipated testimony, it does not significantly undermine plaintiffs' showing of typicality, commonality, or predominance.

Finally, defendant asserts that Mauro still owns the stock, and thus has no liquidated loss, while the other two named plaintiffs sold their shares in a margin call. This is factually correct, and it is undoubtedly true that individualized determinations are necessary to determine the extent of damages suffered by each plaintiff. This does not preclude a finding of typicality or commonality, however, if such damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods. <u>Klay</u>, 382 F.3d at 1259-60; <u>Allapattah Services, Inc. v. Exxon Corp.</u>, 333 F.3d 1248, 1261 (11th Cir. 2003). Such is the situation in securities fraud litigation. E.g., 15 U.S.C. § 78u-4(e); <u>Robbins v. Koger Properties, Inc.</u>, 116 F.3d 1441, 1447 n.5 (11th Cir. 1997).

Additionally, all plaintiffs are required to establish loss causation, 15 U.S.C. § 78u-4(b)(4)("In any private action under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover

13

damages."), and loss causation cannot be established by simply showing the stock was purchased at an artificially high price. Dura Pharmaceuticals, 125 S.Ct. at 1629, 1631; Robbins, 116 F.3d at 1447. Plaintiffs have asserted, and there is sufficient evidence at this stage of the proceedings to establish, that the misrepresentations or omissions were in some reasonably direct or proximate way responsible for their loss, i.e., that there is a proximate relationship between the loss and the misrepresentation.

In sum, the Court finds that plaintiffs have satisfied the typicality and commonality requirements for class certification.

### (3) Adequacy of Representation

Rule 23(a)(4) requires that the named parties "will fairly and adequately protect the interests of the class." Rule 23(a)(4); Valley Drug Co., 350 F.3d at 1189. The purpose of the adequacy requirement is to protect the legal rights of the unnamed class members, Kirkpatrick, 827 F.2d at 726, and applies to both the named plaintiffs and counsel. London v. Wal-Mart, Inc., 340 F.3d 1246, 1253 (11th Cir. 2003). "This 'adequacy of representation' analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." Valley Drug Co., 350 F.3d at 1189 (citation omitted). Because all potential members of a class will be bound by the effect of a judgment, the Court must inquire into whether plaintiffs' counsel is qualified to carry out the litigation, whether plaintiffs have interests antagonistic to the rest of the class, and whether the plaintiffs possess the "personal characteristics and integrity necessary to fulfill the fiduciary role of class representative." Kirkpatrick, 827 F.2d at 726. While minor conflicts will not defeat class certification, certification

14

will be denied where the economic interests and objectives of the named representatives (or their attorneys) differ significantly from the economic interests and objectives of the unnamed class members. Valley Drug Co., 350 F.3d at 1189-90.  At least one circuit has held that the PSLRA has raised the standard for adequacy of representation.  Berger v. Compaq Comupter Corp., 257 F.3d 475, 483 (5th Cir. 2001).

Defendant does not question the qualifications, experience or ability of plaintiffs' counsel.  The Court agrees, and finds plaintiffs' counsel properly qualified, well-experienced, and able to serve as class counsel.  Additionally, the Court finds no conflict of interest between the named plaintiffs and their counsel and the putative class members.

Defendant argues, however, that the LaGrastas are not adequate class representatives because: (1) Their individual case is based upon their direct reliance on First Union's allegedly false opinions, while to be successful a class must establish a fraud-in-the-market case.  Proof of direct reliance will generate a minimal interest in pursuing a fraud on the market case necessary for the other class members.  (2) Mauro and Domenico "lack even rudimentary knowledge about this case"; and (3) plaintiffs collectively know next to nothing about their obligations as class representatives.  (Doc. #127, pp. 19-20).

As discussed above, evidence of direct reliance on the oral representations of the First Union broker by two of the named plaintiffs does not destroy typicality or commonality.  Similarly, the Court finds that it does not render the named plaintiffs unqualified to serve as class representatives.  Proof of fraud on the market is still a major component of the case plead in the Second Amended Complaint, and is not inconsistent with the position

15

of any named plaintiff.

Defendant does not challenge Nicholas' personal qualifications to serve as class representative, other than an alleged lack of knowledge of his obligations as class representative. Based on Nicholas' deposition testimony and the entire file, the Court finds that Nicholas has the personal characteristics to serve as a class representative. Nicholas cannot serve as a class representative if his individual claim is barred by the statute of limitations. Piazza v. Ebsco Industries, Inc., 273 F.3d 1341, 1349 (11th Cir. 2001). For the reasons stated above, however, the Court finds that the record is not sufficiently clear to establish that Nicholas' individual claim is barred by the statute of limitations.

Defendant challenges the personal qualifications of Domenico to serve as a class representative. Domenico is a general contractor who builds homes with his son. He has utilized several corporations in his business in connection with the purchase of real property, and earned a good living in that business. He has been investing in equities, bonds and mutual funds since 1987, and has utilized the services of several stockbrokers over the years, including accounts at Prudential Securities, Merrill Lynch, and Bank of America. He relied upon the advice and recommendations of his brokers, and did no independent research before investing. He had no direct dealings with First Union, does not know who Carolyn Trabuco is, and had never read any research analyst report published by First Union. He understands that a representative plaintiff in a class action case would have certain responsibilities to other investors, but does not read the papers filed by his attorneys or keep up with developments in court, relying instead on the attorneys. He has no previous litigation experience. While it is a closer question, based on Domenico's

16

deposition testimony and the entire file, the Court finds that Domenico has the personal characteristics to serve as a class representative.

Finally, defendant challenges Mauro's qualifications to serve as a proper class representative. Mauro is a successful home builder in Naples, Florida for thirty years who has invested in stocks through various brokers since 1997. He made his first purchase of Ask Jeeves stock after being told by Nicholas of the information given by Ms. Kief, who also told him the stock was a good investment. He cannot read English very well, and became involved in the lawsuit at the request of Nicholas. He does not really know what a class action lawsuit is, has not read the case-related papers, does not know if First Union did anything wrong, and never heard of Carolyn Trabuco. He did not know whether Domenic was involved in the lawsuit. He does not know the meaning of the phrase "conflict of interest," and has no personal opinions as to whether First Union committed a fraud or lied to him. He is still using Ms. Kief for his First Union accounts. The Court agrees with defendant that Mauro lacks even a rudimentary knowledge of the case and knows nothing about his obligations as a class representative, and has virtually abdicated to his attorneys the conduct of the case. Therefore, the Court finds that Mauro is not qualified to serve as a class representative.

In sum, while neither is a professional plaintiff, Nicholas and Domenico are qualified to serve as class representative. No conflict of interest with the putative class exists, and there is no indication that these plaintiffs will not adequately direct the prosecution of the action. The Court finds that these plaintiffs have satisfied the adequacy of representation requirement. Kirkpatrick, 827 F.2d at 727-28. The Court finds that Mauro has

17

not satisfied this standard, for the reasons stated above.

**B.   Rule 23(b)(3) Requirements:**

Rule 23(b)(3) requires a showing "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Products, Inc., 521 U.S. at 623.  This is "far more demanding" than the commonality requirement, Amchem Products, Inc., 521 U.S. at 623-24, and requires that "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.  Common issues will not predominate over individual questions if, as a practical matter, the resolution of ... [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." Cooper, 390 F.3d at 722 (*internal quotations and citation omitted*).  "In determining whether class or individual issues predominate in a putative class action suit, we must take into account the claims, defenses, relevant facts, and applicable substantive law, to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant. . . " Klay, 382 F.3d at 1254, n.7  (*internal quotations and citation omitted*).  The same Supreme Court case which stated that showing predominance is "far more demanding" than showing commonality stated that predominance is a test "readily met" in the securities fraud context.  Amchem Products, 521 U.S. at 625.

Rule 23(b)(3) also requires that "a class action is superior

to other available methods for the fair and efficient adjudication
of the [claims]." This focuses not on the convenience or burden of
a class action, "but on the relative advantages of a class action
suit over whatever other forms of litigation might be realistically
available to the plaintiffs." Klay, 382 F.3d at 1269.

   **(1) Predominance**

   Defendant argues that any common issues between plaintiffs and
other class members will not predominate. Rather, "the LaGrastas
present the usual claims of individual investors aggrieved by their
brokerage firm, the trial of which will involve entirely individual
issues and defenses," and absent class members will also have to
proffer individualized proof to win on their claims. (Doc #127, p.
10).

   Defendant asserts that the issues raised under its typicality
and commonality arguments, especially its statute of limitation
defense and the issues of loss causation, will preclude common
issues from predominating. As discussed above, the Court concludes
that these issues do not negate plaintiffs' showing of predominance
in this case under the law summarized above.

   Defendant also argues that the element of reliance must be
proved on a person-to-person basis, and therefore individual issues
predominate and class certification is not appropriate. Plaintiffs
concede reliance must be established, but assert that in the
securities fraud context reliance may be presumed under the three
theories discussed in Kirkpatrick, 827 F.2d at 721-22: (1)
Affiliated Ute, (2) fraud on the market, and/or (3) the existence
of a common scheme. Defendant responds that none of plaintiffs'
three theories for proving class-wide reliance apply to this case.

   Initially, defendant's suggestion that the reliance
requirement necessarily precludes class certification is incorrect.

"Under well-established Eleventh Circuit precedent, the simple fact that reliance is an element in a cause of action is not an absolute bar to class certification." <u>Klay</u>, 382 F.3d at 1258.  The specific issue, therefore, is whether the reliance requirement precludes class certification in <u>*this*</u> case.

### (a) <u>Affiliated Ute</u>

Plaintiffs rely upon <u>Affiliated Ute Citizens of Utah v. United States</u>, 406 U.S. 128 (1972), a non-class action case, for the proposition that the element of reliance can be presumed in a securities fraud case.  (Doc. #127, p. 13).  <u>Affiliated Ute</u> stated in part: "Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.  This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact." <u>Id</u>. at 153-54.  Plaintiff essentially argues that if reliance can be presumed for individual security fraud plaintiffs, it can be presumed for a class of security fraud plaintiffs.

While <u>Affiliated Ute</u> did not speak in terms of a presumption, the Eleventh Circuit has treated its holding as creating a rebuttable presumption of reliance.  <u>Lipton v. Documation, Inc.</u>, 734 F.2d 740, 742 n.3 (11th Cir. 1984), <u>cert. denied</u>, 469 U.S. 1132 (1985).  The presumption of reliance, however, applies only to cases where plaintiff's claim is primarily one of failure to disclose.  <u>Lipton</u>, 734 F.2d at 742 ("In nondisclosure cases, therefore, a plaintiff may prove reliance through a rebuttable presumption that he relied on the undisclosed information, subject to the defendant proving that the plaintiff's decision would have

been unaffected even if the omitted information had been disclosed.") The Eleventh Circuit noted that <u>Affiliated Ute</u> circumscribed the application of the presumption of reliance "to cases involving primarily a failure to disclose in which defendants who had an affirmative duty to disclose stood mute, leaving plaintiffs with absolutely nothing upon which to rely." <u>Cavalier Carpets, Inc. v. Caylor</u>, 746 F.2d 749, 755 (11th Cir. 1984). Additionally, plaintiffs must demonstrate they generally relied upon defendant, and therefore "an investor who makes his own investment decisions and does not rely upon the defendant for advice when making these decisions is barred from asserting he presumably relied upon a particular omission." <u>Cavalier Carpets</u>, 746 F.2d at 756.

The current case is a "mixed" securities fraud case, involving both alleged misrepresentations and omissions. The Second Amended Complaint asserts defendant is culpable for both a misrepresentation (the false strong buy recommendation) and omissions (regarding the undisclosed conflicts of interest). Therefore, this is not primarily an omission securities fraud case of the type contemplated by <u>Affiliated Ute</u>, and reliance may not be presumed under <u>Affiliated Ute</u>.

**(b) Fraud on the Market**

Plaintiffs also argue that defendant's actions amount to fraud-on-the-market, and thus reliance may be presumed. (Doc. #121, p.15).

The fraud on the market theory is a method of establishing the reliance element in a securities fraud case, and was an extension of the rationale of <u>Affiliated Ute</u> first adopted by the Eleventh Circuit in 1984. <u>Lipton</u>, 734 F.2d at 742-48. The Court stated:

[t]he fraud on the market theory finds its greatest

21

> justification when applied to class actions alleging
> fraudulent misrepresentations or omissions that affected
> security prices on a developed open market.  In such a
> context, it is reasonable to assume that misinformation
> disseminated into the marketplace will affect the market
> price.  It is also reasonable to allow a plaintiff to
> allege that he relied on the integrity of the market
> prices in purchasing the securities and then shift the
> burden to the defendant to disprove actual reliance.

Id. at 745-46.  The Court further stated that the fraud on the

market theory did not eliminate the need for plaintiff to establish

reliance.  Rather, "it simply recognizes that reliance may be

presumed where securities are traded on the open market, subject to

the defendant proving that the misrepresentations were not material

or that the plaintiff's decision to purchase was or would have been

unaffected if he had known the true facts."  Id. at 747-48.  "The

fraud on the market theory is based on the hypothesis that, in an

open and developed securities market, the price of a company's

stock is determined by the available material information regarding

the company and its business .... Misleading statements will

therefore defraud purchasers of stock even if the purchasers do not

directly rely on the statements."  Sikes v. Teleline, Inc., 281

F.3d 1350, 1363, quoting Basic, Inc. v. Levinson, 485 U.S. 224,

241-42 (1988)).

Defendant was a member of the NYSE (Doc. #67, ¶ 16) and Ask

Jeeves was traded on NASDAQ (Doc. #67, ¶ 8), and thus the stock was

traded on a well-established open market.  Defendant asserts that

while fraud-on-the-market is a recognized legal theory, plaintiffs

have neither alleged nor proven facts sufficient to establish a

"true" fraud-on-the-market case.  Defendant contends that the

record evidence establishes that the market price of Ask Jeeves

stock behaved in exactly the opposite way that the fraud-on-the-

market doctrine requires, i.e., the stock price consistently

dropped during the period in which First Union touted it without

22

disclosing its conflict of interest, and the price rose after
disclosure of the conflict of interest.

The record evidence is not subject to quite so simple to
characterize, as the Eleventh Circuit's discussion
exemplifies. <u>LaGrasta</u>, 358 F.3d at 842-843. While the overall trend
of the stock price was down during the time period in which Carolyn
Trabuco recommended the stock as a "strong buy," the stock's course
was not exclusively downward. In light of the inconclusive price
tracking, plaintiffs' allegation that "First Union did adversely
affect the integrity of the market for Ask Jeeves Stock" (Doc. #67,
¶60) is certainly arguable. The Court finds that reasonable minds
could differ in how to interpret the data presented, and
plaintiffs' fraud-on-the-market theory may not be discounted by the
court at this stage of the proceedings. As noted previously, the
court may not reject class certification based only on its
assessment of plaintiffs' likelihood of success on the merits. <u>See</u>
<u>Kirkpatrick</u>, 827 F.2d at 723.

**(c) <u>Kirkpatrick</u> Common Scheme**

Plaintiffs rely upon <u>Kirkpatrick v. J.C. Bradford & Co.</u>, 827
F.2d 718 (11th Cir. 1987) for the proposition that because they
have shown a common unified scheme by defendant reliance may be
presumed. <u>Kirkpatrick</u>, however, does not create a special reliance
doctrine for "common schemes," but rather found sufficient evidence
of reliance under the facts of that case. "The same inquiry into
issues of reliance and commonality is appropriate in these
situations, and the mere fact that a common scheme is alleged,
while certainly relevant to the inquiry, does not resolve the issue
*ipso facto*." <u>Camden Asset Mgmt., L.P. v. Sunbeam Corp.</u>, 2001 WL
34556527 (S.D. Fla. 2001). <u>Kirkpatrick</u> has been followed, and
reliance has been found sufficient, where the common issues of fact

"are quite substantial" and the circumstantial evidence that can be used to show reliance is common to the whole class. <u>Klay</u>, 382 F.3d at 1258-59.  The Court agrees with plaintiffs that this is not a case in which individualized issues of reliance predominate over common questions.

**(2)  Superiority**

In a single short paragraph, defendant asserts that class litigation is not superior to individual court cases or arbitration proceedings.  (Doc. #127, p. 20).

> In many respects, the predominance analysis . . .has a tremendous impact on the superiority analysis . . .for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims.   Rule  23(b)(3) contains a "non exhaustive" list of four factors courts should take into account in making this determination:
> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and]
> (D) the difficulties likely to be encountered in the management of a class action.

<u>Klay</u>, 382 F.3d at 1269 (Internal quotations and citations omitted). The plaintiffs have addressed the four factors identified in Rule 23(b)(3) and assert: (1) no other class member has expressed an interest in individually controlling separate actions; (2) there do not appear to be any related law suits pending in any federal or state court; (3) this forum is the superior one in which to concentrate the claims because First Union has a significant presence here, there are no pending related law suits, and this Court has already expended significant resources on this case. (Doc. #121, p. 17).  Plaintiffs also assert that there will most

likely be no difficulties in managing this suit and that a class action makes it economically viable for class members with small claims to pursue a remedy.  (Id).

After thorough review of the record, the Court finds nothing to contradict plaintiffs' assertions or any reason not to find a class action superior in this case.

**V.**

Defendant also argues that as a matter of law any class certified must end on May 16, 2000, the date the *SmartMoney* article was published.  This is premised on the Eleventh Circuit's finding that the *SmartMoney* article disclosed the alleged fraud to investors, LaGrasta, 358 F.3d at 848, which defendant argues means that investors who purchased the stock after that date cannot be class members because there can be no predominance. (Doc. #127, p. 15 n.7).  The Court agrees.  Those who purchased Ask Jeeves stock after May 16, 2000, are deemed to be aware of the fraud and cannot rely upon a fraud on the market theory to establish reliance. Therefore, they must establish their individual reliance on the misrepresentations or omissions, and their claims will not satisfy the predominance requirement.

Accordingly, it is now

**ORDERED**:

1.  Plaintiffs', Nicholas, Mauro and Domenico LaGrastas' Motion for Class Certification Directed to Second Amended Class Action Complaint and Supporting Memorandum of Law (Doc. #121) is **GRANTED IN PART AND DENIED IN PART.**

A.  The Court certifies a class consisting of all Ask Jeeves shareholders and former shareholders who purchased the Ask Jeeves shares beginning November 18, 1999 and continuing to May 16, 2000. The claim certified is that contained in the Second Amended

25

Complaint and the defenses are those asserted in defendant's Answer and Affirmative Defenses to Plaintiffs' Second Amended Class Action Complaint (Doc. #109).

   B.   Nicholas LaGrasta and Domenico LaGrasta are named class representatives for this class.

   C.   Plaintiffs' current attorneys, Thomas R. Grady of Grady and Associates, L.P.A. and Dana Elizabeth Foster, David P. Ackerman and Scott J. Link of Ackerman, Link & Sartory, P.A., are named the class counsel.

   2.   Defendant's Request for Oral Argument(Doc. #128) is **DENIED.**

   **DONE AND ORDERED** at Fort Myers, Florida, this ___8th___ day of August, 2005.


                                            _____
                                            JOHN E. STEELE
                                            United States District Judge